**UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | Case No. 08-CR-0051-013-CVE |
| | ) | (Civil No. 10-CV-303-CVE-PJC) |
| **MOISES GAETA,** | ) | |
| a/k/a Moi, | ) | |
| | ) | |
| **Defendant.** | ) | |

**OPINION AND ORDER**

On May 11, 2010, defendant Moises Gaeta, also known as "Moi," a federal prisoner appearing with retained counsel, filed a motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 (Dkt. # 580). Defendant subsequently filed an amended § 2255 motion (Dkt. # 595) expanding on the claims in his original § 2255 motion. Section 2255 provides that "a prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or law of the United States . . . may move the court which imposed the sentence to vacate, set aside or correct the sentence."

**I.**

On March 6, 2008, the grand jury returned an indictment charging 11 defendants with, <u>inter alia</u>, conspiring to violate the federal drug laws under 21 U.S.C. § 846. Dkt. # 2. Gaeta was not named as a defendant in the original indictment. The grand jury returned a superseding indictment (Dkt. # 169) charging two additional defendants, including Gaeta, with conspiracy in violation of § 846. Gaeta was also charged with conspiring to commit an offense against the United States - gun

smuggling - in violation of 18 U.S.C. § 371. Dkt. # 169, at 46-47. In a second superseding indictment (Dkt. # 222), the grand jury realleged the same charges against Gaeta. The Court found that defendant was indigent and unable to obtain counsel, and appointed Terry Weber to represent defendant. Dkt. ## 206, 207. Gaeta exercised his right to a jury trial, and trial began on February 9, 2009.

After the government presented its first witness, Gaeta notified the Court that he intended to change his plea to guilty, without a plea agreement, to Counts One and Ten of the second superseding indictment. The Court asked defendant if he would prefer to conduct the hearing with an interpreter, but defendant stated that he spoke English well and did not need an interpreter. Dkt. # 575, at 3-4. The Court advised defendant that he faced a mandatory minimum sentence of ten years and a possible maximum sentence of life imprisonment as to Count One, and a maximum sentence of five years as to Count Ten. Id. at 8. In response to the Court's questions, defendant acknowledged that the Court would consider the advisory sentencing guidelines when determining his sentence and the Court could impose a sentence with the guideline range unless it found a basis to depart or vary from the sentencing guideline range. Id. at 12-13. The Court advised defendant that factors such as the drug quantity, firearms, and Gaeta's role in the offense could affect his guideline range. Id. at 16-17, 34. The Court asked Gaeta if he wished to give up his right to a jury trial, and he answered in the affirmative and executed a waiver of right to jury trial. Id. at 18.

Gaeta described in detail his participation in the conspiracy. Gaeta met Manuel Bonilla in 2003 and learned that Manuel Bonilla was involved in trafficking illegal drugs. Id. at 21-22. Gaeta agreed to go to Juarez, Mexico and transport drugs from Juarez to Tulsa, Oklahoma. Id. at 24. Gaeta knew many of the members of the conspiracy, including Mario Bonilla and Jose Luiz Saenz.

He admitted that he made at least ten trips to Juarez to pick up drugs and returned with those drugs to Tulsa. Id. at 26. He stated that he made two trips to pick up approximately 120 to 160 pounds of marijuana and about eight or nine trips to pick up two to four kilograms of cocaine. Id. at 27. Gaeta also assisted Manuel Bonilla with the distribution of drugs in Tulsa and eventually started selling drugs on his own. Id. at 28-29. In August 2007, Gaeta went to a gun show in Tulsa and purchased ten or more firearms. He used the guns as payment for drugs and knew that the guns would be transported to Mexico. Id. at 30. Mario Bonilla accepted the firearms from Gaeta, because Manuel Bonilla had already left the United States for Mexico. The Court found that Gaeta admitted to the essential elements of Counts One and Ten. Id. at 33-34. The government made a representation of the facts it would be prepared to prove at trial, and some of these facts were different from Gaeta's factual representations. Counsel for the government stated that Gaeta made approximately 20 trips to Mexico and he transported about five kilograms of cocaine to Tulsa on each trip. Id. at 35. He stated that Gaeta helped with the unloading of about one thousand pounds of marijuana in Haskell, Oklahoma on at least one occasion, and he also delivered 10 or 12 firearms to Felix McVay in Haskell. Id. The Court found that Gaeta knowingly and voluntarily changed his plea, and accepted Gaeta's guilty pleas to Counts One and Ten. Id. at 36-37. The Court set Gaeta's sentencing hearing for May 12, 2009.

The United States Probation Office prepared a presentence investigation report (PSR). The PSR noted that Gaeta's legs were amputated below the knee following a shooting incident, and Gaeta used prosthetic legs. PSR at 16. He was diagnosed with depression in 2005 and took Paxil for his depression until he was arrested in 2008. He also reported anger issues in connection with the loss of his legs, but he had not received anger management treatment or counseling for his

depression. Id. Gaeta had a history of substance and alcohol abuse beginning at the age of 17 that included addiction to cocaine and methamphetamine. Gaeta was married to Clarivel Gaeta and they had two children, ages 4 and 1, but he was estranged from his wife. Id. Defendant acknowledged that his substance abuse contributed to his marital problems, which included domestic abuse. Id.

The base offense level was 36 based on a drug quantity of 28,806 kilograms of marijuana.[1] Id. at 10. The PSR recommended a two-level enhancement for possession of a firearm during the offense, as well as two-level enhancements for obstruction of justice and use of a minor. In 2004, defendant began threatening to kill his wife if she reported his drug trafficking activities to the police. Id. at 9. Specifically, he physically assaulted Clarivel Gaeta in January 2004 and threatened to kill or have her killed if she spoke to the police. Gaeta was charged with domestic assault and battery, but the charges were dismissed when Clarivel Gaeta failed to appear as a witness. Gaeta continued to verbally threaten and physically assault Clarivel Gaeta until April 13, 2008, when Clarivel Gaeta left the family home. Id. Clarivel Gaeta claimed that Gaeta repeatedly threatened to kill her parents if she spoke to the police. As to the enhancement for use of a minor, the PSR stated that Gaeta took his daughter Angela Gaeta on trips to Mexico to make it appear as if he were simply traveling with his family and to make him less conspicuous to customs agents on the Unites States-Mexico border. Id. at 8, 10. The adjusted offense level was 42 but, after a two level reduction for acceptance of responsibility, the total offense level was 40. Defendant's criminal

---

[1] Defendant was responsible for 726 kilograms of marijuana, 95 kilograms of cocaine, and 4.54 kilograms of methamphetamine and, when the cocaine and methamphetamine were converted into their marijuana equivalent amounts, the total drug quantity was 28,806 kilograms of marijuana. PSR at 10. Under United States Sentencing Guideline § 2D1.1, this amount fell between 10,000 and 30,000 kilograms of marijuana, resulting in a base offense level of 36.

history placed him in Criminal History Category II. Id. at 17. This resulted in an advisory sentencing guideline range of 324 to 405 months.

Defense counsel filed a sentencing memorandum (Dkt. # 415) objecting to the two level enhancement for use of a minor in the offense and the drug quantity.[2] However, defense counsel noted that the reduction in drug quantity would not affect the advisory guideline range. Dkt. # 415, at 1. Defense counsel argued that a sentence within the advisory guideline range would be excessive and a lesser sentence would adequately protect the public from further crimes of the defendant. He also argued that the amputation of both legs contributed to defendant's "mindset of finding a way to make easy money." Id. at 3.

At the sentencing hearing, defense counsel withdrew Gaeta's objection to the drug quantity, but advised the Court that Gaeta did object to an enhancement for use of a minor during the offense. Dkt. # 576, at 2-3. Defense counsel argued that Gaeta did take his child to Mexico, but the purpose of the trip was to visit family and not to distribute drugs. Id. at 3. The government called Clarivel Gaeta as a witness. She testified that she took several trips to Mexico with Gaeta, and the purpose of the trips was to meet with "Weeyo"[3] and transport money to Mexico. Id. at 4-5. Gaeta wanted to bring his daughter on the trips "[s]o we can look like a family trip, going down, so we wouldn't get stopped." Id. at 6. Two of the trips were for the sole purpose of visiting family, but at least 18 other trips were made for the purpose of transporting money to Mexico and returning with drugs.

---

[2]   The sentencing memorandum does not explain defendant's objection to the drug quantity, except to note that defendant objected to the inclusion of any methamphetamine in the total drug quantity. Dkt. # 415, at 1.

[3]   "Weeyo" is an alias for co-defendant Jose Luis Saenz. See Dkt. # 222 (second superseding indictment).

5

Id. at 7. Clarivel Gaeta testified that she was frightened about giving testimony against Gaeta, because he was verbally and physically abusive. Id. at 8. Defense counsel cross-examined Clarivel Gaeta and attempted to establish that she had no personal knowledge that money or drugs were in the vehicle during or returning from trips to Mexico. However, Clarival Gaeta testified that she saw Gaeta put money in the vehicle before driving to Mexico and she saw him remove drugs upon returning to the United States. Id. at 10-11. The Court commented on Gaeta's new prosthetic devices and asked if they were working properly. Id. at 11. Gaeta stated that his left prosthetic leg was broken, and Court advised Gaeta that it would recommend that he be sent to a medical facility for an evaluation. Id. at 12-13. The Court also asked the United States Marshals Service to assist defendant with replacing his broken prosthetic leg. Id. at 13.

The Court sentenced defendant to 324 months as to Count One and 60 months as to Count Ten, to run concurrently. The Court found Clarivel Gaeta's testimony credible and determined that a two level enhancement for use of a minor as to Count One was supported by the evidence. Id. at 16. The Court considered defendant's motion for a variance and asked defense counsel to make remarks on defendant's behalf. Defense counsel cited Gaeta's health problems and difficult upbringing as factors contributing to his criminal conduct, and identified Gaeta's loss of his legs as another mitigating factor for sentencing. Id. at 18. The Court denied Gaeta's motion for a variance and found that Gaeta's conduct fell within "the mine run of other cases." Id. at 23. When determining Gaeta's sentence, the Court considered the statutory factors under 18 U.S.C. § 3553(a) and stated that "defendant's history of violence and drug abuse is mitigated by his physical condition involving the loss of both of his legs and his diagnosis of depression." Id. at 24. The Court found that Gaeta should receive a sentence at the low end of the advisory guideline range, even though the

government argued for a sentence in the middle or higher end of the advisory guideline range. The Court also recommended that defendant receive a medical evaluation and substance abuse treatment. Id. at 25.

The Court entered a judgment and commitment on May 18, 2009 (Dkt. # 440). Gaeta did not appeal his conviction or sentence to the Tenth Circuit Court of Appeals, and his conviction became final ten days after entry of judgment.[4] Thus, Gaeta's conviction became final on June 2, 2009. Under § 2255(f), a criminal defendant has one year from the date his criminal conviction becomes final to file a § 2255 motion. On May 11, 2010, defendant filed a § 2255 motion (Dkt. # 580) raising two claims of ineffective assistance of counsel. The Court granted defendant's request for leave to file an amended § 2255 motion, and advised him that an amended § 2255 motion asserting new claims must be filed before June 2, 2010. Dkt. # 581. Defendant filed an amended § 2255 motion (Dkt. # 595) on June 30, 2010 expanding on claims raised in his original § 2255 motion. Defendant's original § 2255 motion was filed within one year from the date his conviction became final, and any claims raised in that motion are properly before the Court.[5]

---

[4]  The Federal Rules of Appellate Procedure were amended effective December 1, 2009 and the time to file an appeal in criminal cases in now 14 days. However, defendant's conviction was entered before this amendment took effect and he had 10 days to file an appeal under the former version of Fed. R. App. P. 4(b)(1).

[5]  The government argues that defendant has attempted to assert new claims in his amended § 2255 motion and any new claims are barred by the one year statute of limitations. The Court will address the government's argument when reviewing defendant's second ineffective assistance of counsel claim. See infra at II(B). However, the government does not dispute that the claims asserted in defendant's original § 2255 motion are timely. Dkt. # 617, at 16.

## II.

Defendant raised two claims in his original § 2255 motion. First, he argues that his attorney was constitutionally deficient for failing to file an appeal, as requested by defendant. Dkt. # 580, at 5. Second, he claims that defense counsel's performance at defendant's sentencing hearing was deficient, because defense counsel failed to emphasize defendant's disability and related mental health issues as a basis for a sentencing variance. Id. at 6-7.

### A.

Defendant claims that defense counsel ignored his requests to appeal his sentence to the Tenth Circuit, and this constituted per se ineffective assistance of counsel. Dkt. # 595, at 4-8. He states that he twice asked defense counsel to file an appeal and defense counsel suggested that an appeal would be unsuccessful. Id. at 5. The government has submitted an affidavit from Weber stating that defendant did not ask Weber to file a notice of appeal. Dkt. # 617, Ex. A, at 2-3.

Defendant claims that he first asked Weber to file an appeal in a hallway immediately after the sentencing hearing on May 12, 2009. According to defendant, he asked Weber "[w]hat about an appeal," and Weber said "[w]hat about it." Dkt. # 595, at 5. Defendant also claims that he asked Weber to file an appeal at a Rule 11 meeting later that day. Defendant allegedly stated "Hey Terry, I want the appeal to get filed," and Weber asked "[i]s that what you want." Id. Defendant claims that he responded "yes" to Weber's question. Id. at 6. Weber denies that either of these conversations occurred. Weber states that he had a good working relationship with defendant, and neither defendant nor defendant's family asked Weber to file an appeal of defendant's conviction or sentence. Dkt. # 617, Ex. A., at 2-3. He also claims that a defense attorney has little opportunity to speak to his client immediately after a sentencing hearing and, even if a defendant were inclined

to talk after a hearing, he would never speak to a defendant about his case in the hallway after a hearing with members of the United States Marshals Service present. Id. at 3.

Defendant argues that Weber provided ineffective assistance of counsel by failing to file a notice of appeal. The Supreme Court has clearly established that "a lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable." Roe v. Flores-Ortega, 528 U.S. 470, 477 (2000). While there is no bright-line rule requiring a defense attorney to ask the defendant if he wishes to appeal, an attorney has a duty under the Sixth Amendment to the United States Constitution to consult with his client about the possibility of an appeal if the "particular defendant reasonably demonstrated to counsel that he was interested in appealing." Id. at 480. This situation is an exception to the general rule that a defendant must show that his attorney's error had an adverse effect on the proceedings to prevail on a claim on ineffective assistance of counsel, because a defense attorney's failure to file an appeal results in the defendant's forfeiture of a judicial proceeding. Id. at 483. A criminal defendant is not required to show that the appeal would have had merit. Id. at 486. The Tenth Circuit has held that an attorney who disregards a defendant's request to file a notice of appeal is ineffective and this error is presumptively prejudicial. United States v. Snitz, 342 F.3d 1154, 1156 (10th Cir. 2003). The remedy for an attorney's failure to file an appeal as requested by a defendant is granting the defendant leave to file a delayed appeal. United States v. Garrett, 402 F.3d 1262, 1267 (10th Cir. 2005).

The government acknowledges that this claim should be set for an evidentiary hearing, because there is a factual dispute as to whether defendant asked Weber to file an appeal. Dkt. # 617, at 16-18. The Court agrees, and this claim will be set for an evidentiary hearing. If defendant did

ask Weber to file an appeal and Weber disregarded defendant's request, this would constitute ineffective assistance of counsel and entitle defendant to a delayed appeal. However, Weber disputes defendant's representations and denies that defendant or his family asked Weber to file an appeal. This factual dispute is central to defendant's claim and cannot be resolved without an evidentiary hearing.

**B.**

Defendant argues that Weber provided ineffective assistance of counsel at defendant's sentencing hearing based on alleged deficiencies with the sentencing memorandum, Weber's failure to emphasize defendant's disability and personal history, Weber's withdrawal of defendant's objection to the drug quantity, and Weber's failure to challenge the reasonableness of the advisory sentencing guidelines for drug cases. Dkt. # 595, at 14-23. The government argues that any aspect of defendant's claim that was not raised in his original § 2255 motion is time-barred, because defendant's amended § 2255 motion was filed after the one year statute of limitations expired and he cannot use an amended § 2255 to avoid the statute of limitations.

To establish ineffective assistance of counsel, a defendant must show that his counsel's performance was deficient and that the deficient performance was prejudicial. Strickland v. Washington, 466 U.S. 668, 687 (1984); Osborn v. Shillinger, 997 F.2d 1324, 1328 (10th Cir. 1993). A defendant can establish the first prong by showing that counsel performed below the level expected from a reasonably competent attorney in criminal cases. Strickland, 466 U.S. at 687-88. There is a "strong presumption that counsel's conduct falls within the range of reasonable professional assistance." Id. at 688. In making this determination, a court must "judge . . . [a] counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's

conduct." Id. at 690. Moreover, review of counsel's performance must be highly deferential. "[I]t is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." Id. at 689.

To establish the second prong, a defendant must show that counsel's deficient performance prejudiced the defendant to the extent that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694; see also Lockhart v. Fretwell, 506 U.S. 364, 369-70 (1993). In Glover v. United States, 531 U.S. 198, 199 (2001), the Supreme Court held that "any amount of actual jail time has Sixth Amendment significance." Thus, the prejudice prong of the Strickland test does not require that any increase in sentence must meet a standard of significance. See United States v. Horey, 333 F.3d 1185, 1187-88 (10th Cir. 2003).

The government argues that the Court's consideration of defendant's ineffective assistance of counsel claim is limited to the claim as stated in defendant's original § 2255 motion. A criminal defendant may seek leave to file an amended § 2255 motion under Fed. R. Civ. P. 15(a), but an amended § 2255 motion may include new claims only if the amendment is filed within the one year statute of limitations. United States v. Guerrero, 488 F.3d 1313, 1316 (10th Cir. 2007). The Tenth Circuit has stated:

> an . . . amendment to a § 2255 motion "which, by way of additional facts, clarifies or amplifies a claim or theory in the [original motion] may, in the District Court's discretion, relate back to the date of [the original motion] if and only if the [original motion] was timely filed and the proposed amendment does not seek to add a new claim or to insert a new theory into the case."

11

United States v. Espinoza-Saenz, 235 F.3d 501, 505 (10th Cir. 2000) (quoting United States v. Thomas, 221 F.3d 430, 431 (3d Cir. 2000)). A district court has the discretion to permit a defendant to file an amended § 2255 motion, as long as the amendments are "strictly limited in scope and substance" to the claims raised in the original § 2255 motion. Vega-Figueroa v. United States, 206 F.R.D. 524, 525 (D.P.R. April 4, 2002).

Defendant's original § 2255 motion alleged two grounds for relief. First, defendant claimed that Weber failed to file a direct appeal of defendant's conviction and sentence as requested by defendant. Dkt. # 580, at 5. Second, he argued that Weber did not request a sentencing variance based on defendant's "physical handicap" and related "mental health issues." Id. at 6-7. Defendant was clear that the basis for his second claim was Weber's alleged failure to "emphasize the defendant's double amputations as principle [sic] grounds for a [sentencing] reduction." Id. at 6. In his amended § 2255 motion, defendant provided additional facts and legal authority concerning Weber's alleged failure to honor defendant's request to file an appeal. He also alleged that Weber was generally ineffective during the sentencing proceedings, because the sentencing memorandum was deficient, Weber should not have withdrawn defendant's objection to the drug quantity, Weber's request for a sentencing variance based on defendant's double amputation was inadequate, Weber failed to emphasize defendant's positive qualities, and Weber failed to challenge the guideline range on the basis that the Guidelines overemphasize the importance of the drug quantity in drug cases. Dkt. # 595, at 14-23. Defendant's original § 2255 motion did not suggest that defendant intended to challenge any aspect of Weber's performance during sentencing proceedings other than Weber's alleged failure to emphasize defendant's physical handicap and related mental health issues. When granting defendant's request for leave to file an amended § 2255 motion, the Court advised

defendant that he could file an amended § 2255 motion asserting new claims only if he filed the amended motion before his one year statute of limitations expired on June 2, 2010. Dkt. # 581; see also Dkt. # 588 (June 8, 2010 order extending defendant's time to file amended § 2255 motion and advising him that his time to add new claims had expired). Defendant did not file his amended motion until June 30, 2010. Defendant's amended § 2255 motion attempts to assert new claims concerning Weber's performance during the sentencing proceedings, but these claims are barred by the one year statute of limitations. The Court will consider only defendant's claim that Weber failed to emphasize defendant's physical handicap and related mental issues as a basis for a sentencing variance.[6]

Defendant argues that Weber failed to emphasize defendant's physical handicap as grounds for a variance, and he should be given a new sentencing hearing. However, the PSR and transcript

---

[6]  Even if the Court were to consider all of defendant's untimely claims, the government argues that defendant's claims lack merit and he is not entitled to relief. Defendant argues that the sentencing memorandum failed to provide sufficient factual and legal support as would be expected in a complex drug conspiracy case. Dkt. # 595, at 16. However, defendant fails to note that the sentencing memorandum included an objection to a two level enhancement for use of a minor, and the Court held an evidentiary hearing on this issue. See Dkt. # 415, at 1. Even if the sentencing memorandum could have provided more extensive argument on this issue, the Court heard evidence and additional argument at the sentencing hearing, and defendant was not prejudiced by any deficiency in the sentencing memorandum. Defendant claims that defense counsel was not authorized to withdraw defendant's objection to the inclusion of any amount of methamphetamine in the drug quantity, but this would not have affected the advisory guideline range. Dkt. # 595, at 16. Even assuming that the objection had been granted, defendant's base offense level would have remained the same and defendant was not prejudiced by Weber's conduct. Defendant argues that Weber should have argued that the Sentencing Guidelines overemphasize the drug quantity in drug cases. Id. at 18-21. However, Weber had no obligation to argue that the advisory guideline range was presumptively unreasonable. Defendant has cited no authority suggesting that Weber's performance was deficient for failing to challenge the reasonableness of the Sentencing Guidelines. Weber argued for a variance or non-guideline sentence for defendant based on defendant's personal history and characteristics, and this was proper way to seek a reduced sentence for defendant. See Dkt. # 576, at 18-19.

13

of the sentencing hearing show that the Court was fully aware of defendant's physical condition and considered this issue when determining defendant's sentence. The PSR states that both of defendant's legs were amputated below the knee, and defendant had depression and anger problems related to the loss of his legs. PSR at 16. The Court commented on defendant's prosthetic legs at the sentencing hearing,[7] and recommended that the Bureau of Prisons provide defendant a medical evaluation. Dkt. # 576, at 11-13. The Court at sentencing also asked the United States Marshals Service to make arrangements to get a new prosthetic leg for defendant, because defendant was complaining that one of his prosthetic legs was cracked or broken. Id. at 12-13. Weber argued that defendant's loss of his legs contributed to his involvement in drug trafficking and, although not a complete explanation for defendant's conduct, was a basis for a sentencing variance. Id. at 18-19. The Court found that defendant's physical condition was a mitigating factor that supported a sentence at the low end of the guideline range. Id. at 24.

Defendant has not shown that Weber's performance was deficient or that additional argument concerning defendant's physical handicap would have had any impact on defendant's sentence. Weber commented on the amputation of defendant's legs and argued that this was a mitigating factor when determining defendant's sentence. Weber's decision not to overemphasize this factor was reasonable. As defendant notes, his physical condition was obvious, see Dkt. # 580, at 7, and the Court considered this factor when sentencing defendant. Defendant fails to consider that a sentence at the middle or higher end of the guideline range might have been appropriate if the Court had not considered defendant's physical condition as a mitigating factor. Additional argument on this issue

---

[7]  The Court was aware before trial that defendant used prosthetic legs. Defendant appeared at the pretrial conference in a wheelchair, because his prosthetic legs were causing him pain.

14

would not have been helpful and Weber's performance was not deficient due to his decision not to make defendant's physical handicap the centerpiece of his request for a sentencing variance.

**IT IS THEREFORE ORDERED** that defendant's motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 (Dkt. # 580) and amended motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 (Dkt. # 595) are **set for an evidentiary hearing on September 27, 2010 at 1:00 p.m.** on defendant's ineffective assistance of counsel claim concerning defense counsel's failure to file an appeal.

**IT IS FURTHER ORDERED** that defendants' motions (Dkt. ## 580, 595) are **denied** as to defendant's claim of ineffective assistance of counsel during the sentencing proceedings.

**DATED** this 14th day of September, 2010.

*/s/ Claire V. Eagan*
CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE